# EXHIBIT "A"

*Imperial Oil Company*
*SPO450.01.D.4025.117302*          PAGE 3 OF 11

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (Agreement)
is by and between IMPERIAL OIL COMPANY, INC. (Imperial), a New Jersey Corporation
with its principal place of business at Orchard Place, Morganville, NJ 07751 and the DEFENSE
SUPPLY CENTER RICHMOND (DSCR), a field activity of the Defense Logistics Agency
(DLA), a component of the United States Department of Defense.

### RECITALS

1. WHEREAS, Imperial and DSCR were parties to Contract No. SPO450-01-D-4025
(formerly known as Contract No. SPO450-00-D-0292 and herein known as Contract 4025) and
Contract No. SPO450-02-D-4054 (Contract 4054) (collectively the "Contracts"); and

2. WHEREAS, On March 15, 2006 and in accordance with the Contract Disputes Act of
1979 (CDA) 41 U.S.C. 601 *et. seq.* and Federal Acquisition Regulation (FAR) 33.206, Imperial
filed a certified Claim for Equitable Adjustment (Claim) in the amount of $3,784,294 under
Contract 4025 and $359,688 under Contract 4054 for a total amount of $4,143,982 plus interest
as calculated under the CDA; and

3. WHEREAS, Imperial's claim was based *inter alia* on assertions that DSCR failed to
adopt an appropriate index to calculate economic price adjustments under the Contracts, used an
economic price adjustment clause which failed to reflect actual market conditions, impermissibly
capped economic price increases at 10% annually, delayed payment of economic price increases
under the Contracts, placed a significant number of orders just before the Contracts expired, and
failed to instruct DOD activities to timely accept Imperial's deliveries under the Contracts; and

Imperial Oil Company

PAGE 4 OF 11

SP0450.01·D·4025·117·Z02

4. WHEREAS, Imperial re-calculated and/or supplemented its Claim on June 28, 2006;

September 12, 2006; December 14, 2006; January 29, 2007; February 7, 2007; and February 22,

2007; and

5. WHEREAS, DSCR considered and replied to Imperial's re-calculations and/or

supplementations on May 4, 2006; July 14, 2006; January 22, 2007; January 30, 2007; February

16, 2007 and March 1, 2007; and

6. WHEREAS, the parties desire to compromise and settle the Claim.

NOW THEREFORE, in reliance on the representations contained herein and in

consideration of the mutual promises, covenants and obligations in this Agreement and the

resolution of all issues related to the Contracts and for other good and valuable consideration,

receipt of which is by each hereby acknowledged, DSCR and Imperial do mutually agree as

follows:

## TERMS AND CONDITIONS OF SETTLEMENT

7. DSCR agrees to pay, and Imperial agrees to accept, the sum of NINE HUNDRED

EIGHTY FOUR THOUSAND NINE HUNDRED FIFTY THREE DOLLARS AND TWENTY

SIX CENTS ($984,953.26 and herein known as Settlement Amount) in full and final settlement

of the Claim.

8. DSCR will issue a modification to Delivery Order SP045001D4025117Z under

Contract 4025 referencing this Agreement. The modification will allow for a lump sum payment

to Imperial in the amount of $984,953.26 and cancel all deliveries due under the order. The

modification will be forwarded to Imperial for signature in "pdf" format within three (3) business

days of the execution of this Agreement. Imperial will then submit an invoice for the Settlement

Amount, along with a copy of the modification and this Agreement, to the Defense Finance and

2

Imperial Oil Company
SPO450.02.D. 4025.117302                    Page 5 of 11

Accounting Service (DFAS). DFAS will pay the Settlement Amount, due under the

modification to Delivery Order SPO45001D4025117Z, as provided in the attached Assignment

and Notice of Assignment entered pursuant to the Assignment of Claims Act of 1940, as

amended, 31 U.S.C. 3727, 41 U.S.C. 15.

9. DSCR will use its best efforts to expedite payment of the Settlement Amount by

DFAS.

10. Within thirty (30) days of execution of this Agreement DSCR will cancel all other

outstanding delivery orders under the Contracts and will code each delivery order as cancelled at

the request of Imperial.

11. Within one hundred twenty (120) days of the execution of this Agreement DSCR and

Imperial will complete a joint good faith review of Imperial's Automated Best Value System

(ABVS) rating for line items under the Contracts. Should DSCR determine that any late

deliveries or non-deliveries (other than the outstanding delivery orders described in paragraphs 8

and 10) were caused by receiving problems at depots or by other events for which Imperial did

not assume the risk under the Contracts, DSCR will make an appropriate correction to

Imperial's ABVS rating.

12. DSCR agrees that the matters covered by this Agreement: (a) shall not form the

basis for any referral by DSCR to debar or suspend Imperial or any successor from contracting

with the federal government; (b) shall not be considered (formally or informally) in determining

Imperial's responsibility or eligibility for future DSCR contracts under FAR Part 9.1.

13. Each party will bear its own costs and attorney's fees. Imperial waives any claim for

costs or attorney's fees including, but not limited to the Equal Access to Justice Act, 28 USC

§2412, 5 USC § 504.

Imperial Oil Company
SP0450.01.D.4025.117802                    Page 6 of 11

14.    This writing constitutes the entire agreement of DSCR and Imperial with respect to the subject matter of this Agreement and may not be amended, modified or terminated in any manner except by written agreement signed by authorized representatives of both parties.

15.    All prior agreements, representations, promises, negotiations, proposals, assurances and understandings with regard to the subject matter of this Agreement are integrated in and superseded by this Agreement.

16.    This Agreement, together with all of the obligations and terms hereof, shall inure to the benefit of and shall bind assigns, successors-in-interest, or transferees of the parties hereto.

17.    DSCR and Imperial agree to execute any such further papers or documents as shall be necessary and proper in order to fulfill the terms and conditions of this Agreement.

18.    The undersigned hereby declare that they have read, completely understand and voluntarily accept the terms of this Agreement.

19.    This Agreement is entered into by the parties solely in order to resolve their disputes and does not constitute an admission of liability or wrongdoing by either party and/or acceptance of their legal theories.

20.    This Agreement and its terms are confidential.  The parties agree not to disclose this Agreement, the terms of this Agreement, or the existence of this Agreement to any person or entity other than officers, employees, agents, or representatives of Imperial Oil Company, Inc. or the United States Government without the written consent of the other party.

## RELEASES

21.    For and in consideration of the settlement specified above, DSCR hereby fully and finally releases and discharges Imperial, its officers, employees, agents, successors and assigns, from any and all liability, claim or claims, demand or demands, cause or causes of

4

Imperial Oil Company
SP0450-01-D-4025-117202                    PAGE 7 OF 11

action, accrued or unaccrued, known or unknown, which DSCR has or might have arising under or related to Contract 4025 and Contract 4054. All such claims and potential claims on behalf of DSCR are hereby released and satisfied in full, and all such controversies and potential litigation in favor of DSCR are hereby compromised and settled.

22.    For and in consideration of the settlement specified above, Imperial hereby fully and finally releases and discharges DSCR, DLA, the Department of Defense, the United States of America, and its officers, employees, agents, successors and assigns, from any and all liability, claim or claims, demand or demands, cause or causes of action, accrued or unaccrued, known or unknown, arising under or related to Contract 4025 and Contract 4054 which Imperial has or might have. All such claims and potential claims on behalf of Imperial are hereby released and satisfied in full, and all such controversies and potential litigation in favor of Imperial are hereby compromised and settled.IN WITNESS WHEREOF, Imperial and DSCR have caused this Settlement Agreement to be executed by their duly authorized officers and representatives, respectively, on the dates indicated below:

Defense Supply Center Richmond:          Imperial Oil Co., Inc.


By: _____          By: _____
Patricia L. McMahon                         H. Scott Stevens
Contracting Officer                         President


Date: __3/2/07__                           Date: _3-9-07_

2 attachments:

5

# EXHIBIT "B"

*Imperial Oil Company*
*SP0450.01.D.4025.117Z02*                    *Page 8 of 11*

## ASSIGNMENT

THIS ASSIGNMENT made this 9th day of March, 2007 by IMPERIAL OIL COMPANY, INC. (Imperial) a New Jersey Corporation with its principal place of business at Orchard Place, Morganville, NJ 07751 hereinafter ("Assignor"), to WACHOVIA BANK, ("Assignee");

WHEREAS, Assignor and the United States of America acting through its agency, The Defense Supply Center Richmond ("DSCR"), have entered into Contract Delivery Order Number SPO45001D4025117Z ("Order");

WHEREAS, under the provisions of the Assignment of Claims Act of 1940, as amended, 31 U.S.C. 3727, 41 U.S.C. 15, assignments of payments due or to become due under contracts are permitted to facilitate the performance of such contracts; and

WHEREAS, the Assignor wishes to assign payments due or to become due under the Order to Assignee;

NOW THEREFORE, for valuable consideration, receipt of which is hereby acknowledged:

1. Assignor hereby assigns the payments due or to become due under the Order and any revisions, modifications, amendments, options, claims and extensions thereto to the Assignee, its successors and assigns; and

2. Assignor hereby authorizes and directs the United States of America, its departments, agencies, offices, agents, and officers to draw and deliver, including by wire transfer, to the order of Assignee all payments now due or that may hereafter become due or owing under the Order as follows:

> Wachovia Bank
> 1300 Eye Street, N.W.
> 12th Floor, West Tower
> Washington, DC 20005
> ABA Routing No. 054001220
> Account No. 2000024529028
> Peckar, Abramson, Bastianelli & Kelley, LLP, Trustee
> Attn. Ms. Palkina La Mell
> Telephone (202) 414-3397

Imperial Oil Company
SPO450.01.D.4025.117302                    Page 9 of 11

Assignment
Page 2 of 2

3.    Assignor represents and warrants that it has been released from any and all prior
      assignments of payments and claims hereby assigned, or any part thereof, and warrants
      that this Assignment has been duly and validly executed and constitutes a first and
      paramount claim against payments and claims hereby assigned to the best of its
      knowledge; and

4.    Assignee shall have or be under no duty whatever to perform or carry out any of the
      obligations undertaken by Assignor under the Order; and

5.    This instrument may be executed in several counterparts, each of which shall be
      considered original.

      IN WITNESS WHEREOF, Assignor has executed this Assignment on the date first
      written above.

                              IMPERIAL OIL COMPANY, INC

                              BY:  _____ (SEAL)
                                   H. Scott Stevens
                                   President

STATE OF NEW JERSEY

COUNTY OF ___Monmouth___

      On this 9 day of March, 2006 2007, personally came before me, the undersigned
Notary Public in the aforesaid State and County, H. Scott Stevens, who being by me so duly
sworn, states that he is the President of Imperial Oil Company, Inc. and has signed his name to
the foregoing instrument in attestation.

      Witness my hand and notarial seal this 9 day of March, 2006 2007.

                              _____
                              Notary Public

                              My Commission expires: ___5·17·2007___

# EXHIBIT "C"

Imperial Oil Company
SPO450.01.D.4025.117202

Page 10 of 11

## NOTICE OF ASSIGNMENT

TO:    Ms. Patricia L. McMahon
       Contracting Officer
       Defense Support Center Richmond
       8000 Jefferson Davis Highway
       Richmond, VA 23297-5100
       Attn DSCR-FAJA
       e-mail: patricia.mcmahon@dla.mil

1.    PLEASE TAKE NOTICE: This has reference to Contract Delivery Order No.
      SPO45001D4025117Z ("Order") entered into between the U.S. Department of Defense,
      acting through its agency, the Defense Supply Center Richmond and Imperial Oil
      Company, Inc.

2.    Moneys due or to become due under the Order described above have been assigned to the
      undersigned pursuant to provisions of the Assignment of Claims Act of 1940, as
      amended, 31 U.S.C. 3727, 41 U.S.C. 15.

3.    A true copy of the instrument of assignment executed by Imperial Oil Company, Inc. is
      attached to the original notice.

4.    Payments due or to become due under this Order should be made to:

                    Wachovia Bank
                    1300 Eye Street, N.W.
                    12th Floor, West Tower
                    Washington, DC 20005
                    ABA Routing No. 054001220
                    Account No. 2000024529028
                    Peckar, Abramson, Bastianelli, & Kelley, LLP, Trustee
                    Attn. Ms. Palkina La Mell
                    Telephone (202) 414-3397

5.    Please return to the undersigned the three enclosed copies of this Notice with appropriate
      notations showing the date and hour of receipt and signed by the person acknowledging
      receipt on behalf of the Defense Supply Center Richmond.

*Imperial Oil Company*
*SPO450.01.D.4025.117z0z*                    Page 11 OF 11

Notice of Assignment
Page 2 of 2

Very truly yours,

Wachovia Bank

BY: _William T. Mundy_

TITLE: _SVP_

1300 Eye Street, N.W.
12th Floor, West Tower
Washington, DC 20005
Attn. Ms. Palkina La Meli
Telephone (202) 414-3397

ACKNOWLEDGEMENT:

Receipt is acknowledgement of the above Notice of Assignment and a copy of the instrument of assignment. These were received at _3:20_ (a.m.) (p.m.) on _3/21/07_, 2007 or as indicated on the time/date stamp below.

_Patricia L. McMahon_
(Name: Print)

_FST Lead_
(Title)

_Patricia L. McMahon_
(Signature)
On behalf of:
Defense Supply Center Richmond

cc:
Defense Finance and Accounting Service
Accounting and Payments Division
Attn: DFAS-
Columbus, OH 43218-6250
Telephone (614) 693-
FAX (614) 693-
E-mail: dfascolumbus@dfas.mil

# EXHIBIT "D"

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. CONTRACT ID CODE | PAGE | OF |
| | K | PAGES | 1 | 11 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ.NO. | 5. PROJECT NO. (If applicable) |
| 117Z02 | See Blk. 16C | YPG05061D01142 | |

| 6. ISSUED BY                CODE        SP0400 | 7. ADMINISTERED BY (If other than Item 6) CODE    S3101A |

Defense Supply Center Richmond
ATTN: DSCR-PAHL
8000 Jefferson Davis Highway
Richmond, Virginia 23299.

THE TIATOR: JUDY COLLINS
DSCR-PAHL654-804-279-1737, FAX (804)279-4708

DCMA SPRINGFIELD
BUILDING 1, ARDEC
PH 973 724 8321
PICATINNY          NJ  07806-5000

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |

IMPERIAL OIL CO INC
FOOT OF ORCHARD PL
MORGANVILLE NJ   07751-9702

| | 9B. DATED (SEE ITEM 11) |
| | 10A. MODIFICATION OF CONTRACT/ORDER NO. |
| X | SP0450-01-D-4025-1172 |
| | 10B. DATED (SEE ITEM 13) |
| | 2005 MAR 25 |

| CODE    58863 | FACILITY CODE |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

| [ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers | [ ] is extended. | [ ] is not extended. |

Offeror must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to

| 12. Accounting and Appropriation Data (If required) | |
| GG: S7X4930 5000 01 0C25 S33-Z50   Payment By: SP0631 | DECREASE: *1433124.00 |

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.**
**IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: mutual agreement between contracting parties. |
| D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor [ ] is not [X] is required to sign this document and return ____1____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
ADDITIONAL DOCUMENTS TO FOLLOW WITH HARDCOPY

NSN:   9150-00-151-2772

This modification confirms the Settlement Agreement dated March 9, 2007.

The following CLIN(s) have been cancelled:

CONTINUED ON NEXT PAGE

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
| Scott Stevens, President | Patricia L. McMahon,  Contracting Officer |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 3/23/07 | BY (Signature of Contracting Officer) | 3/26/07 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

PerFORM (DLA)

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243




| | | | | | |
|---|---|---|---|---|---|
| **CONTINUATION SHEET** | | Reference Number of Document Being Continued: SP0450-01-D-4025-117Z/ 117Z02 | | PAGE PAGE 2 | OF 11 |

| Clin | NSN | QTY | U/I | Price | Amount |
|---|---|---|---|---|---|
| 0005AA | 9150-00-191-2772 | 264 | DR | 158.95 | 41962.80 |
| 0005AB | 9150-00-191-2772 | 1836 | DR | 158.95 | 291832.20 |
| 0006AA | 9150-00-191-2772 | 264 | DR | 158.95 | 41962.80 |
| 0006AB | 9150-00-191-2772 | 5556 | DR | 158.95 | 883126.20 |

Clin 9926 is hereby added in the amount of $984,853.26 to cover the Settlement Agreement between Imperial Oil Company and Defense Supply Center Richmond.

The Contractor is hereby authorized to invoice for the total amount of Clin 9926 to cover the Settlement Cost The amount set forth in Clin 9926 represents complete settlement of the amount due the Contractor and all other demands and liabilities of the Contractor and the Government under the contract.

Assignment of Claim as processed on March 9, 2007 is hereby approved for this contract. The Assignment of Claim, pages eight thru eleven, is hereby incorporated into this modification.

Assignee must register with the Central Contractor Registration (CCR) for payment to be made. CCR Information must be sent to: Defense Logistics Information Service, Customer Service Branch, 74 Washington Avenue North, Suite 7, Battle Creek, MI 49017-3084 or fax completed from to (616)961-7243, Customer Service 1-888-227-2423

Total amount of this contract/order is decreased by $1433124.00 from $1433124.00 to $0.00

Distribution:
S3101A/DCMA SPRINGFIELD
HQ0337/DFAS - COLUMBUS CENTER

# EXHIBIT "E"



# VOUCHER PAYMENTS BY CAGE REPORT

April 23, 2007

*Details For All Records*

CAGE: 58563

| INVOICE NUMBER | ORDER NUMBER | CLIN | VOUCHER NUMBER | DATE OF PAYMENT | INV AM |
|---|---|---|---|---|---|
| *More* 64107 | 117Z | 9926 | H65327 | 04/23/07 | |
| **SUBTOTAL:** 1 | | | | | |



## myInvoice Detail Report

April 23, 2007

CAGE: 58563                                                    DUNS

CONTRACT: SP045001D4025                    DELIVERY ORDER
CLIN: 9926                                              INVOICE

SHIPMENT: MODP702                                STATUS
INVOICE AMOUNT PAID: 984,953.26

RECEIVE DATE: 03/30/07                          ISSUE DATE
ACCEPTANCE:                                              TIN

LAST ACTION: 04/23/07                      PROCESSING SITI
PAYMENT DUE: 04/29/07                         MOCAS REASON

ACTUAL PAYMENT DATE: 04/23/07            CHECK/EFT AMOUNT
VOUCHER NUMBER: H65327                            ACRN

TRACE NUMBER:                                             DSSN
CHECK NUMBER: NO CHECK                       CURRENCY

RECEIVING BANK ID: 054001220            QUANTITY PAID
ACCOUNT NUMBER: 2000024529028              UNIT PRICE

PAYEE NAME: IMPERIAL OIL CO INC
ADDRESS: FOOT OF ORCHARD PL

MORGANVILLE   NJ 077519702

INVOICE AMOUNT: 984,953.26                   ADJUSTMENT1
DISCOUNT: 0.00                                        REASON1

FREIGHT: 0.00                                    ADJUSTMENT2
INTEREST: 0.00                                        REASON2

TAX WITHHELD: 0.00                             LATE PAY REASON
VOUCHER REMARKS: .00 ADV PAY
984953.26 WITHHOLD       .00 LIQ DAMAGE       .00 P

# EXHIBIT "F"

# HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP

## COUNSELLORS AT LAW

BERNARD HELLRING (1916-1991)
JOEL D. SIEGAL △
JONATHAN L. GOLDSTEIN △
MICHAEL EDELSON
MARGARET DEE HELLRING △
RICHARD D. SHAPIRO △
CHARLES ORANSKY △
RICHARD B. HONIG △
RICHARD K. COPLON △
ROBERT S. RAYMAR △
RONNY J. G. SIEGAL △
STEPHEN L. DREYFUSS △
JOHN A. ADLER △
JUDAH I. ELSTEIN △
BRUCE S. ETTERMAN △
MATTHEW E. MOLOSHOK △
DAVID N. NARCISO △
ROBERT B. ROSEN △
SHERYL E. KOOMER
PATRICIA A. STAIANO
RONNIE F. LIEBOWITZ
LISA P. PARKER
CHRISTY L. SAALFELD △

ONE GATEWAY CENTER
NEWARK, NEW JERSEY 07102-5386
(973) 621-9020
————
FAX (973) 621-7406
www.hlgslaw.com

OF COUNSEL
PHILIP LINDEMAN II △

△ NJ & NY

April 25, 2007

VIA E-MAIL/REGULAR MAIL

Ms. Patricia L. McMahon
Contracting Officer
Defense Logistics Agency
Defense Supply Center Richmond
8000 Jefferson Davis Highway
Richmond, VA 23297-5100

RE:   DEMAND FOR PAYMENT ($984,953.26)
      Contract No. SPO450-01-D-4025-117Z
      Imperial Oil Company, Inc.

Dear Ms. McMahon:

This firm represents Imperial Oil Company, Inc. ("Imperial") of Morganville, NJ. On April 18, 2007, Imperial filed for Chapter 11 Bankruptcy in the District of New Jersey, Trenton vicinage.

On March 21, 2007, in your capacity as an authorized Defense Supply Center Richmond ("DSCR") Contracting Officer, you executed a Settlement Agreement and Mutual Relief ("Settlement Agreement"), whereby Imperial is to be paid $984,953.26 (the "Settlement Amount") in settlement of a contract dispute between DSCR and Imperial. Further, on March 26, 2007, and again

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP

Patricia L. McMahon       -2-         April 25, 2007

in your capacity as a DSCR Contracting Officer,
you executed Contract Modification No. 117Z02,
authorizing and directing payment of this sum to
Imperial, including a specific fund citation
obligating the Settlement Amount for payment to
Imperial.  The Settlement Agreement and Contract
Modification are enclosed for your review and
convenience.

On behalf of Imperial, DEMAND IS HEREBY MADE for
the immediate payment of NINE HUNDRED EIGHTY FOUR
THOUSAND NINE HUNDRED FIFTY THREE DOLLARS AND
TWENTY SIX CENTS ($984,953.26) as specified in
the Settlement Agreement.

Very truly yours,

PATRICIA A. STAIANO

PAS/bmj
Enclosures
cc:  Ronald Uscher, Esq. (VIA E-MAIL)
     Edward R. Murray, Esq. (VIA E-MAIL)
       Assistant Counsel
       Defense Support Center Richmond
     Mark Barta, Esq. (VIA E-MAIL)
       Office of Counsel
       Defense Finance and Accounting Service
     Mr. H. Scott Stevens
     Mr. George Kulick

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. CONTRACT ID CODE | | PAGE PAGES | OF |
|---|---|---|---|---|
| | K | | 1 | 1 |

| 2. AMENDMENT/MODIFICATION NO. 117Z02 | 3. EFFECTIVE DATE See Blk. 16C | 4. REQUISITION/PURCHASE REQ.NO. YPG05061D01142 | 5. PROJECT NO. (If applicable) |
|---|---|---|---|

6. ISSUED BY          CODE    SP0400

Defense Supply Center Richmond
ATTN: DSCR-PAIC
8000 Jefferson Davis Highway
Richmond, Virginia 23297.

INITIATOR: JUDY COLLINS
DSCR-PAIIC1658 804-279-3737, FAX (804)279-4708

7. ADMINISTERED BY (If other than Item 6) CODE   S3301A

DCMA SPRINGFIELD
BUILDING 1 ARDEC
PH #73 724 4321
PICATINNY             NJ  07806-5600

8. NAME AND ADDRESS OF CONTRACTOR  (No., street, city, county, State and ZIP Code)

IMPERIAL OIL CO INC
FOOT OF ORCHARD PL
MORGANVILLE NJ  07751-9702

CODE    58561          FACILITY CODE

| (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|
| | 9B. DATED (SEE ITEM 11) |
| | 10A. MODIFICATION OF CONTRACT/ORDER NO. |
| X | SP0450-01-D-4025-1172 |
| | 10B. DATED (SEE ITEM 13) 2005 MAR 25 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offerors must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data (If required)
GG: 97X4930 5000 03 0C25 633-150   Payment By: SDC33Y

**DECREASE: $1433124.00**

**13. THIS ITEM ONLY APPLIES TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (x) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: mutual agreement between contracting parties. |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:  Contractor ☐ is not  ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

ADDITIONAL DOCUMENTS TO FOLLOW WITH HARDCOPY

NSN:  9150-00-151-2772

This modification confirms the Settlement Agreement dated March 9, 2007.

The following CLIN(s) have been cancelled:

        CONTINUED ON NEXT PAGE

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) Scott Stevens, President | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) Patricia L. McMahon, Contracting Office |
|---|---|
| 15B. CONTRACTOR/OFFEROR _(signature)_ | 16B. UNITED STATES OF AMERICA BY _(signature)_ |
| (Signature of person authorized to sign) | (Signature of Contracting Officer) |
| 15C. DATE SIGNED 3/23/07 | 16C. DATE SIGNED 3/26/07 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

PerFORM (DLA)

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | Reference Number of Document Being Continued: SP0450-01-D-4025-117Z/ 117Z02 | PAGE PAGE 2 | OF 11 |
|---|---|---|---|

```
Clin    NSN              QTY    U/I   Price    Amount
0006AA  9150-00-191-2772 264    DR    158.95   41962.80
0005AB  9150-00-191-2772 1836   DR    158.95   291832.20
0006AA  9150-00-191-2772 264    DR    158.95   41962.80
0006AB  9150-00-191-2772 5556   DR    158.95   883126.20
```

Clin 9926 is hereby added in the amount of $884,953.26 to cover the Settlement Agreement between Imperial Oil Company and Defense Supply Center Richmond.

The Contractor is hereby authorized to invoice for the total amount of Clin 9926 to cover the Settlement Cost The amount set forth in Clin 9926 represents complete settlement of the amount due the Contractor and all other demands and liabilities of the Contractor and the Government under the contract.

Assignment of Claim as processed on March 9, 2007 is hereby approved for this contract. The Assignment of Claim, pages eight thru eleven, is hereby incorporated into this modification.

Assignee must register with the Central Contractor Registration (CCR) for payment to be made. CCR Information must be sent to: Defense Logistics Information Service, Customer Service Branch, 74 Washington Avenue North, Suite 7, Battle Creek, MI 49017-3084 or fax completed from to (616)961-7243, Customer Service 1-688-227-2423

Total amount of this contract/order is decreased by $1433124.00 from $1433124.00 to $0.00

Distribution:
S3101A/DCMA SPRINGFIELD
HQ0337/DFAS - COLUMBUS CENTER

*Imperial Oil Company
SPO450.01.D.4025. 117802*

*Page 3 of 11*

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (Agreement) is by and between IMPERIAL OIL COMPANY, INC. (Imperial), a New Jersey Corporation with its principal place of business at Orchard Place, Morganville, NJ 07751 and the DEFENSE SUPPLY CENTER RICHMOND (DSCR), a field activity of the Defense Logistics Agency (DLA), a component of the United States Department of Defense.

## RECITALS

1. WHEREAS, Imperial and DSCR were parties to Contract No. SPO450-01-D-4025 (formerly known as Contract No. SPO450-00-D-0292 and herein known as Contract 4025) and Contract No. SPO450-02-D-4054 (Contract 4054) (collectively the "Contracts"); and

2. WHEREAS, On March 15, 2006 and in accordance with the Contract Disputes Act of 1979 (CDA) 41 U.S.C. 601 *et. seq.* and Federal Acquisition Regulation (FAR) 33.206, Imperial filed a certified Claim for Equitable Adjustment (Claim) in the amount of $3,784,294 under Contract 4025 and $359,688 under Contract 4054 for a total amount of $4,143,982 plus interest as calculated under the CDA; and

3. WHEREAS, Imperial's claim was based *inter alia* on assertions that DSCR failed to adopt an appropriate index to calculate economic price adjustments under the Contracts, used an economic price adjustment clause which failed to reflect actual market conditions, impermissibly capped economic price increases at 10% annually, delayed payment of economic price increases under the Contracts, placed a significant number of orders just before the Contracts expired, and failed to instruct DOD activities to timely accept Imperial's deliveries under the Contracts; and

Imperial Oil Company
SP0450.01-D-4025.117Z0Z                    Page 4 of 11

4. WHEREAS, Imperial re-calculated and/or supplemented its Claim on June 28, 2006; September 12, 2006; December 14, 2006; January 29, 2007; February 7, 2007; and February 22, 2007; and

5. WHEREAS, DSCR considered and replied to Imperial's re-calculations and/or supplementations on May 4, 2006; July 14, 2006; January 22, 2007; January 30, 2007; February 16, 2007 and March 1, 2007; and

6. WHEREAS, the parties desire to compromise and settle the Claim.

NOW THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants and obligations in this Agreement and the resolution of all issues related to the Contracts and for other good and valuable consideration, receipt of which is by each hereby acknowledged, DSCR and Imperial do mutually agree as follows:

## TERMS AND CONDITIONS OF SETTLEMENT

7. DSCR agrees to pay, and Imperial agrees to accept, the sum of NINE HUNDRED EIGHTY FOUR THOUSAND NINE HUNDRED FIFTY THREE DOLLARS AND TWENTY SIX CENTS ($984,953.26 and herein known as Settlement Amount) in full and final settlement of the Claim.

8. DSCR will issue a modification to Delivery Order SP045001D4025117Z under Contract 4025 referencing this Agreement. The modification will allow for a lump sum payment to Imperial in the amount of $984,953.26 and cancel all deliveries due under the order. The modification will be forwarded to Imperial for signature in "pdf" format within three (3) business days of the execution of this Agreement. Imperial will then submit an invoice for the Settlement Amount, along with a copy of the modification and this Agreement, to the Defense Finance and

2

Imperial Oil Company
SPO450.02.D.4025.117702

PAGE 5 OF 11

Accounting Service (DFAS). DFAS will pay the Settlement Amount, due under the modification to Delivery Order SPO45001D4025117Z, as provided in the attached Assignment and Notice of Assignment entered pursuant to the Assignment of Claims Act of 1940, as amended, 31 U.S.C. 3727, 41 U.S.C. 15.

9. DSCR will use its best efforts to expedite payment of the Settlement Amount by DFAS.

10. Within thirty (30) days of execution of this Agreement DSCR will cancel all other outstanding delivery orders under the Contracts and will code each delivery order as cancelled at the request of Imperial.

11. Within one hundred twenty (120) days of the execution of this Agreement DSCR and Imperial will complete a joint good faith review of Imperial's Automated Best Value System (ABVS) rating for line items under the Contracts. Should DSCR determine that any late deliveries or non-deliveries (other than the outstanding delivery orders described in paragraphs 8 and 10) were caused by receiving problems at depots or by other events for which Imperial did not assume the risk under the Contracts, DSCR will make an appropriate correction to Imperial's ABVS rating.

12. DSCR agrees that the matters covered by this Agreement: (a) shall not form the basis for any referral by DSCR to debar or suspend Imperial or any successor from contracting with the federal government; (b) shall not be considered (formally or informally) in determining Imperial's responsibility or eligibility for future DSCR contracts under FAR Part 9.1.

13. Each party will bear its own costs and attorney's fees. Imperial waives any claim for costs or attorney's fees including, but not limited to the Equal Access to Justice Act, 28 USC §2412, 5 USC § 504.

3

Imperial Oil Company
SR0400.01.D.4025.117302

Page 6 OF 11

14. This writing constitutes the entire agreement of DSCR and Imperial with respect to the subject matter of this Agreement and may not be amended, modified or terminated in any manner except by written agreement signed by authorized representatives of both parties.

15. All prior agreements, representations, promises, negotiations, proposals, assurances and understandings with regard to the subject matter of this Agreement are integrated in and superseded by this Agreement.

16. This Agreement, together with all of the obligations and terms hereof, shall inure to the benefit of and shall bind assigns, successors-in-interest, or transferees of the parties hereto.

17. DSCR and Imperial agree to execute any such further papers or documents as shall be necessary and proper in order to fulfill the terms and conditions of this Agreement.

18. The undersigned hereby declare that they have read, completely understand and voluntarily accept the terms of this Agreement.

19. This Agreement is entered into by the parties solely in order to resolve their disputes and does not constitute an admission of liability or wrongdoing by either party and/or acceptance of their legal theories.

20. This Agreement and its terms are confidential. The parties agree not to disclose this Agreement, the terms of this Agreement, or the existence of this Agreement to any person or entity other than officers, employees, agents, or representatives of Imperial Oil Company, Inc. or the United States Government without the written consent of the other party.

## RELEASES

21. For and in consideration of the settlement specified above, DSCR hereby fully and finally releases and discharges Imperial, its officers, employees, agents, successors and assigns, from any and all liability, claim or claims, demand or demands, cause or causes of

4

*Imperial Oil Company*
*SP0 450-01-D-4025-117202*                    PAGE 7 OF 11

action, accrued or unaccrued, known or unknown, which DSCR has or might have arising under or related to Contract 4025 and Contract 4054. All such claims and potential claims on behalf of DSCR are hereby released and satisfied in full, and all such controversies and potential litigation in favor of DSCR are hereby compromised and settled.

22.    For and in consideration of the settlement specified above, Imperial hereby fully and finally releases and discharges DSCR, DLA, the Department of Defense, the United States of America, and its officers, employees, agents, successors and assigns, from any and all liability, claim or claims, demand or demands, cause or causes of action, accrued or unaccrued, known or unknown, arising under or related to Contract 4025 and Contract 4054 which Imperial has or might have. All such claims and potential claims on behalf of Imperial are hereby released and satisfied in full, and all such controversies and potential litigation in favor of Imperial are hereby compromised and settled. IN WITNESS WHEREOF, Imperial and DSCR have caused this Settlement Agreement to be executed by their duly authorized officers and representatives, respectively, on the dates indicated below:

Defense Supply Center Richmond:          Imperial Oil Co., Inc.


By: _Patricia L McMahon_                 By: _H. Scott Stevens_
Patricia L. McMahon                          H. Scott Stevens
Contracting Officer                          President


Date: _3/2/07_                           Date: _3-9-07_

2 attachments:

5

Imperial Oil Company
SPO450.01.D.4025.1172O2                    Page 8 of 11

## ASSIGNMENT

THIS ASSIGNMENT made this 9th day of March, 2007 by IMPERIAL OIL COMPANY, INC. (Imperial) a New Jersey Corporation with its principal place of business at Orchard Place, Morganville, NJ 07751 hereinafter ("Assignor"), to WACHOVIA BANK, ("Assignee");

WHEREAS, Assignor and the United States of America acting through its agency, The Defense Supply Center Richmond ("DSCR"), have entered into Contract Delivery Order Number SPO45001D40251172 ("Order");

WHEREAS, under the provisions of the Assignment of Claims Act of 1940, as amended, 31 U.S.C. 3727, 41 U.S.C. 15, assignments of payments due or to become due under contracts are permitted to facilitate the performance of such contracts; and

WHEREAS, the Assignor wishes to assign payments due or to become due under the Order to Assignee;

NOW THEREFORE, for valuable consideration, receipt of which is hereby acknowledged:

1.    Assignor hereby assigns the payments due or to become due under the Order and any revisions, modifications, amendments, options, claims and extensions thereto to the Assignee, its successors and assigns; and

2.    Assignor hereby authorizes and directs the United States of America, its departments, agencies, offices, agents, and officers to draw and deliver, including by wire transfer, to the order of Assignee all payments now due or that may hereafter become due or owing under the Order as follows:

Wachovia Bank
1300 Eye Street, N.W.
12th Floor, West Tower
Washington, DC 20005
ABA Routing No. 054001220
Account No. 2000024529028
Peckar, Abramson, Bastianelli & Kelley, LLP, Trustee
Attn. Ms. Palkina La Mell
Telephone (202) 414-3397

*Imperial Oil Company*
*SP0450.01.D.4025.117302*

Page 9 OF 11

Assignment
Page 2 of 2

3.     Assignor represents and warrants that it has been released from any and all prior assignments of payments and claims hereby assigned, or any part thereof, and warrants that this Assignment has been duly and validly executed and constitutes a first and paramount claim against payments and claims hereby assigned to the best of its knowledge; and

4.     Assignee shall have or be under no duty whatever to perform or carry out any of the obligations undertaken by Assignor under the Order; and

5.     This instrument may be executed in several counterparts, each of which shall be considered original.

IN WITNESS WHEREOF, Assignor has executed this Assignment on the date first written above.

IMPERIAL OIL COMPANY, INC

BY: _____ (SEAL)
H. Scott Stevens
President

STATE OF NEW JERSEY

COUNTY OF *Monmouth*

On this 9 day of *March, ~~2006~~ 2007*, personally came before me. the undersigned Notary Public in the aforesaid State and County, H. Scott Stevens, who being by me so duly sworn, states that he is the President of Imperial Oil Company, Inc. and has signed his name to the foregoing instrument in attestation.

Witness my hand and notarial seal this 9 day of *March, ~~2006~~ 2007*.

_____
Notary Public

My Commission expires: *5-17-2007*

Imperial Oil Company
SP0450.01.D.4025.11730Z                    page 10 OF 11

## NOTICE OF ASSIGNMENT

TO:    Ms. Patricia L. McMahon
       Contracting Officer
       Defense Support Center Richmond
       8000 Jefferson Davis Highway
       Richmond, VA  23297-5100
       Attn DSCR-FAJA
       e-mail: patricia.mcmahon@dla.mil

1.    PLEASE TAKE NOTICE:  This has reference to Contract Delivery Order No.
      SPO45001D4025117Z ("Order") entered into between the U.S. Department of Defense,
      acting through its agency, the Defense Supply Center Richmond and Imperial Oil
      Company, Inc.

2.    Moneys due or to become due under the Order described above have been assigned to the
      undersigned pursuant to provisions of the Assignment of Claims Act of 1940, as
      amended, 31 U.S.C. 3727, 41 U.S.C. 15.

3.    A true copy of the instrument of assignment executed by Imperial Oil Company, Inc. is
      attached to the original notice.

4.    Payments due or to become due under this Order should be made to:

                        Wachovia Bank
                        1300 Eye Street, N.W.
                        12th Floor, West Tower
                        Washington, DC 20005
                        ABA Routing No. 054001220
                        Account No. 2000024529028
                        Peckar, Abramson, Bastianelli, & Kelley, LLP, Trustee
                        Attn. Ms. Palkina La Mell
                        Telephone (202) 414-3397

5.    Please return to the undersigned the three enclosed copies of this Notice with appropriate
      notations showing the date and hour of receipt and signed by the person acknowledging
      receipt on behalf of the Defense Supply Center Richmond.

8

*Imperial Oil Company*
*SPO450.01.D.4025.1172o2*

*PAGE 11 OF 11*

Notice of Assignment
Page 2 of 2

Very truly yours,

Wachovia Bank

BY: _William T. Mundy_

TITLE: _SVP_

1300 Eye Street, N.W.
12th Floor, West Tower
Washington, DC 20005
Attn. Ms. Palkina La Mell
Telephone (202) 414-3397

ACKNOWLEDGEMENT:

Receipt is acknowledgement of the above Notice of Assignment and a copy of the
instrument of assignment. These were received at _3:20_ (a.m.) (p.m.) on _3/21/07_,
2007 or as indicated on the time/date stamp below.

_Patricia L. McMahon_
(Name: Print)

_FST Lead_
(Title)

_Patricia L. McMahon_
(Signature)
On behalf of:
Defense Supply Center Richmond

cc:

Defense Finance and Accounting Service
Accounting and Payments Division
Attn: DFAS-
Columbus, OH 43218-6250
Telephone (614) 693-
FAX (614) 693-
E-mail: dfascolumbus@dfas.mil

9

# EXHIBIT "G"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY



| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 96-1521 (AET) |
| CHAMPION CHEMICAL CO., ) | |
| IMPERIAL OIL CO.,EMIL ) | |
| STEVENS AND JUNE STEVENS ) | |
| ) | |
| Defendants/ ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ACADEMY BUS TOURS, INC., et al. ) | |
| ) | |
| Third-Party Defendants. ) | |

FEB 2 6 2001

CONSENT DECREE BETWEEN THE UNITED STATES
AND EMIL STEVENS AND JUNE STEVENS

TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . 3

II.     JURISDICTION . . . . . . . . . . . 8

III.    PARTIES BOUND . . . . . . . . . . 8

IV.     DEFINITIONS . . . . . . . . . . . 9

V.      REIMBURSEMENT OF RESPONSE COSTS . . . . . . . 12

VI.     RESTRICTIONS ON DISTRIBUTIONS TO SETTLING
        DEFENDANTS . . . . . . . . . . . 14

VII.    FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT
        DECREE . . . . . . . . . . . 18

1

90-11-2-946

VIII.     COVENANT NOT TO SUE BY PLAINTIFF . . . . . . . . 22

IX.      COVENANT NOT TO SUE BY SETTLING DEFENDANTS . . . 27

X.       EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION . . 29

XI.      ACCESS TO INFORMATION . . . . . . . . . . . . . 31

XII.     RETENTION OF RECORDS. . . . . . . . . . . . . . 33

XIII.    NOTICES AND SUBMISSIONS . . . . . . . . . . . 36

XIV.     RETENTION OF JURISDICTION . . . . . . . . . . 37

XV.      INTEGRATION . . . . . . . . . . . . . . . . . 37

XVI.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT. . . 38

XVII.    EFFECTIVE DATE. . . . . . . . . . . . . . . . 38

XVIII.   SIGNATORIES/SERVICE . . . . . . . . . . . . . 38

2

I.   BACKGROUND

The Champion Chemical Company Superfund Site

A.   The United States of America ("United States"), on
behalf of the Administrator of the United States Environmental
Protection Agency ("EPA"), filed a complaint on March 29, 1996,
and an amended complaint on May 27, 1997, in this matter pursuant
to Sections 106 and 107(a) of the Comprehensive Environmental
Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§
9606, 9607(a), as amended ("CERCLA").   Parties named by the
United States in the complaint and amended complaint are Champion
Chemical Company, Imperial Oil Company, Inc., and Emil Stevens.


B.   The United States, in its amended complaint, seeks
reimbursement of Response Costs incurred and to be incurred by
EPA and the Department of Justice for response actions taken at
or in connection with the release or threatened release of
hazardous substances at the Imperial Oil Co., Inc./Champion
Chemical Site located at Orchard Place in the Township of
Marlboro, Monmouth County, New Jersey ("the Imperial Site"), and
for recovery from certain defendants of penalties from defendants
Champion Chemical Company and Imperial Oil Company pursuant to
Section 106(b) of CERCLA, 42 U.S.C. § 9606(b).


C.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA
placed the Imperial Site on the National Priorities List, set
forth at 40 C.F.R. Part 300, Appendix B, by publication in the

3

Federal Register on September 1, 1983, 48 Fed. Reg. 40658.

D.   In response to a release or a substantial threat of a
release of a hazardous substance(s) at or from the Imperial Site,
a Remedial Investigation and Feasibility Study ("RI/FS") was
conducted at the Imperial Site pursuant to 40 C.F.R. § 300.430.

E.   In response to a release or a substantial threat of a
release of a hazardous substance(s) at or from the Imperial Site,
EPA has conducted response actions at the Imperial Site,
including but not limited to the following actions: (1) the
removal of oil (contaminated with PCBs, organic and inorganic
compounds) which exists on the surface of the water table; (2)
the installation of a fence around certain contaminated areas of
the Imperial Site; (3) the removal of a waste clay pile situated
on the Imperial Site; and (4) the removal of buried drums
containing contaminated waste oil and sludge.

F.   EPA has issued three Records of Decision ("RODs") for
the Imperial Site.  The first ROD, which selected a remedy to
address the soil contaminated with PCBs, arsenic, and petroleum
hydrocarbons at the two off-plant areas of the Imperial Site, was
signed by the Regional Administrator on September 26, 1990 ("1990
ROD").  The second ROD, which selected a remedy to address the
groundwater contamination at the Imperial Site, was signed by the
Regional Administrator on September 30, 1992 ("1992 ROD").  The

4

third ROD, which selected a remedy to address the soil
contaminated with PCBs, arsenic, and petroleum hydrocarbons at
the main operating portion of the Imperial Site, was signed by
the Regional Administrator on September 30, 1999 ("1999 ROD").

G.  An Explanation of Significant Differences ("ESD") was
issued by EPA on September 30, 1997 to explain changes made to
the 1990 ROD.  Pursuant to the ESD, EPA conducted the removal of
arsenic contaminated soil from four residential properties
adjacent to the Imperial Oil plant.

H.  Emil Stevens is a shareholder and former officer of
Champion Chemical Company and a former officer of Imperial Oil
Company.  June Stevens is an officer and shareholder of Champion
Chemical Company and the sole shareholder of Imperial Oil
Company.  Emil Stevens and June Stevens are hereinafter "Settling
Defendants."

I.  Champion Chemical Company is the current owner of the
Imperial Site.

J.  Imperial Oil Company is the current operator at the
Imperial Site.

The Burnt Fly Bog Superfund Site

K.  On January 14, 1997, the United States filed a separate
complaint under Section 107(a) of CERCLA seeking reimbursement of

5

response costs incurred and to be incurred by EPA regarding the Burnt Fly Bog Superfund Site ("Burnt Fly Bog Site") which is located on Tyler Lane in Marlboro Township, Monmouth County, New Jersey. United States v. Manzo, et al., Civ. No. 97-289 (MLC). The two Sites are related because hazardous substances were transported from the Imperial Oil Company Superfund Site to or from the Burnt Fly Bog Superfund Site for storage and/or disposal. The parties named in that complaint are Dominick and Carmella Manzo and Ace-Manzo, Inc. Those parties have asserted claims against numerous third-party defendants. Emil Stevens and June Stevens have not been named as parties to that action. Champion Chemical and Imperial Oil Company, however, have been named as third-party defendants to that action.

L. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Burnt Fly Bog Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 1, 1983, 48 Fed. Reg. 40658.

M. In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Burnt Fly Bog Site, a Remedial Investigation and Feasibility Study ("RI/FS") was conducted at the Burnt Fly Bog Site pursuant to 40 C.F.R. § 300.430.

N. EPA has issued three RODs for the Burnt Fly Bog Site.

6

The first ROD, which selected a remedy to excavate soil and
sludge contaminated with PCBs, lead, and petroleum hydrocarbons
at the Uplands portion of the Burnt Fly Bog Site, was signed by
the Assistant Administrator for the Office of Solid Waste and
Emergency Response on November 16, 1983.  The second ROD, which
selected a remedy to address sediment and soil contamination at
the Westerly Wetlands portion of the Burnt Fly Bog Site, was
signed by the Regional Administrator on September 29, 1988.  The
third ROD, which selected a remedy to address contaminated soils
in the Northerly Wetlands and Tar Patch Area of the Site, was
signed by the Regional Administrator on September 30, 1998.


     O.  The purpose of this Consent Decree is to provide for
Settling Defendants' payment of a portion of the Response Costs
incurred or to be incurred by the United States at the Imperial
and Burnt Fly Bog Sites in exchange for contribution protection
and a covenant not to sue as to both Sites.


     P.  The Settling Defendants that have entered into this
Consent Decree do not admit any liability to Plaintiff arising
out of the transactions or occurrences alleged in the complaints
with respect to the Imperial Site or the Burnt Fly Bog Site.


     Q.  During settlement negotiations in this matter, Settling
Defendants represented to the United States that they have
insufficient financial resources from which to reimburse fully

7

the United States for its Response Costs.

R.  The United States and Settling Defendants agree, and
this Court by entering this Consent Decree finds, that this
Consent Decree has been negotiated by the Parties in good faith,
that settlement of this matter will avoid prolonged and
complicated litigation between the Parties, and that this Consent
Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree,
it is ORDERED, ADJUDGED, AND DECREED:

## II.  JURISDICTION

1.  This Court has jurisdiction over the subject matter of
this action pursuant to 28 U.S.C. §§ 1331, 1345 and 42 U.S.C. §§
9606, 9607, 9613(b) and also has personal jurisdiction over the
Settling Defendants.  Settling Defendants consent to and shall
not challenge entry of this Consent Decree or this Court's
jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.  This Consent Decree is binding upon the United States,
and upon Settling Defendants and their heirs, successors and
assigns.  Any change in ownership or other legal status,
including but not limited to, any transfer of assets or real or
personal property, shall in no way alter the status or

responsibilities of Settling Defendants under this Consent

Decree.

## IV.   DEFINITIONS

3.   Unless otherwise expressly provided herein, terms used

in this Consent Decree which are defined in CERCLA or in

regulations promulgated under CERCLA shall have the meaning

assigned to them in CERCLA or in such regulations.   Whenever

terms listed below are used in this Consent Decree or in any

appendix attached hereto, the following definitions shall apply:


a.   "Burnt Fly Bog Site" shall mean the Burnt Fly Bog

Superfund Site which is comprised of approximately 60 acres

located within Marlboro Township, Monmouth County, and Old Bridge

Township, Middlesex County, New Jersey located near the

intersection of Texas and Spring Valley Roads.   Based on local

tax assessment maps from Marlboro Township, the Site includes all

or portions of properties, identified as Block 38, Lots 1, 1A, 2,

4, 3, 6, 6A, 43 and 44, located in Marlboro Township, Monmouth

County, and Block 13003, Lot 23.11, 24.11 and 31 located in Old

Bridge Township, Middlesex County, along with any properties upon

or below which hazardous substances have come to be located.


b.   "CERCLA" shall mean the Comprehensive Environmental

Response, Compensation, and Liability Act of 1980, as amended, 42

U.S.C. § 9601, et seq.

9

c.  "Consent Decree" shall mean this Consent Decree and  any appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control.

d.  "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

e.   "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

f.  "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

g.  "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

h.  "ESD" shall mean the Explanation of Significant Differences signed on September 30, 1997, by the Regional Administrator, EPA Region II, or her delegatee and all attachments thereto.

10

i.  "Imperial Site" shall mean the Imperial Oil Co.,
Inc./Champion Chemical Superfund Site located in Marlboro, New
Jersey.  The Site includes, but is not limited to, at least three
parcels of land in Marlboro Township, New Jersey (Block 10, Lot
30; Block 12, Lot 10; and Block 12, Lot 9) along with any
properties upon or below which hazardous substances have come to
be located.

j.  "Interest" shall mean interest at the current rate
specified for interest on investments of the Hazardous Substance
Superfund established by 26 U.S.C. § 9507, compounded annually on
October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

k.  "Paragraph" shall mean a portion of this Consent Decree
identified by an arabic numeral or an upper or lower case letter.

l.  "Parties" shall mean the United States and the Settling
Defendants.

m.  "Plaintiff" shall mean the United States.

n.  "Response Costs" shall mean all costs, including but not
limited to direct and indirect costs, that EPA or DOJ, on behalf
of EPA, has paid or will pay in connection with response actions
for the Imperial Site and the Burnt Fly Bog Site, plus accrued

11

Interest.

o.  "Section" shall mean a portion of this Consent Decree
identified by a roman numeral.

p.  "Settling Defendants" shall mean Emil Stevens and June
Stevens.

q.  "United States" shall mean the United States of America,
including its departments, agencies and instrumentalities.

r. "Waste Material" shall mean (1) any "hazardous substance"
under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any
pollutant or contaminant under Section 101(33), 42 U.S.C.
§ 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA,
42 U.S.C. § 6903(27).


## V.  REIMBURSEMENT OF RESPONSE COSTS

4. Payment of Response Costs to the EPA Hazardous Substance
Superfund. Within 30 days of entry of this Consent Decree,
Settling Defendants shall, jointly and severally, pay to the EPA
Hazardous Substance Superfund the total sum of Four Hundred
Thousand Dollars ($400,000.00) in reimbursement of Response
Costs, plus an additional sum for Interest on that amount
calculated from January 1, 2000, through the date of payment, in
the following manner:

12

(a) Settling Defendants shall pay the sum of $300,000, plus
an additional amount for Interest, towards reimbursement of
Response Costs incurred in connection with the Imperial Site.
The total amount paid by Settling Defendants under this
subparagraph shall be deposited into the Imperial Oil Co.,
Inc./Champion Chemical Company Special Account within the EPA
Hazardous Substance Superfund to be retained and used to conduct
or finance response actions at or in connection with the Imperial
Oil Co., Inc./Champion Chemical Company Site. Any balance
remaining in the Imperial Oil Co., Inc./Champion Chemical Company
Special account upon completion of all response actions shall be
transferred by EPA to the EPA Hazardous Substance Superfund.

(b) Settling Defendants shall pay the sum of $100,000, plus
an additional amount for Interest, towards reimbursement of
Response Costs incurred in connection with the Burnt Fly Bog
Site. The total amount paid under this paragraph shall be
deposited into the Burnt Fly Bog Special Account within the EPA
Hazardous Substance Superfund to be retained and used to conduct
or finance response actions at or in connection with the Burnt
Fly Bog Site. Any balance remaining in the Burnt Fly Special
Account upon completion of all response actions shall be
transferred by EPA to the EPA Hazardous Substance Superfund.

(c) Payments shall be made by FedWire Electronic Funds
Transfer ("EFT") to the U.S. Department of Justice account in

accordance with current EFT procedures. For the Imperial Site,
the payment should reference USAO File Number _____, EPA
Region II, the Site Spill ID Number 02-86, and DOJ Case Number
90-11-2-946. For the Burnt Fly Bog Site, payment should
reference USAO File Number _____, EPA Region II, the Site
Spill ID 02-08, and DOJ Case Number 90-11-2-946. Payment shall be
made in accordance with instructions provided to Settling
Defendants by the Financial Litigation Unit of the U.S.
Attorney's Office in the District of New Jersey following lodging
of the Consent Decree. Any payments received by the Department
of Justice after 4:00 p.m. Eastern Time shall be credited on the
next business day. Settling Defendants shall send notice to EPA
and DOJ that payment has been made in accordance with Section XI
(Notices and Submissions) with a copy to Mr. Ronald Gherardi,
Chief, Financial Management Branch, U.S. EPA, Region II, 290
Broadway, 29th Floor, New York, New York 10007-1866.


(d) Defendants certify that the payment amounts, or any part
thereof, to be made by them under this Decree have not and shall
not be reimbursed to them, loaned to them, paid on their behalf,
or otherwise provided to them by Imperial Oil Company or Champion
Chemical Company.


VI. <u>RESTRICTIONS ON DISTRIBUTIONS TO SETTLING DEFENDANTS</u>

5. a. Within thirty (30) days of entry of this Decree
Emil Stevens shall resign from any compensated positions in

14

Champion Chemical Company or Imperial Oil Company, except that he
shall continue as a consultant with Imperial Oil Company for that
minimum number of hours as shall be necessary to qualify him for
health insurance benefits. His compensation shall be limited to
such amount as may be, from time to time, necessary to cover such
health insurance costs. Emil Stevens shall receive no other
distributions, compensation, or payments of any kind from
Imperial Oil Company or Champion Chemical Company. In addition,
the principal amount in the profit sharing plan account of Emil
Stevens shall be frozen as of December 31, 1999; that amount plus
continuing investment dividends and interest thereon shall be
available for periodic withdrawal by Emil Stevens. Finally,
Champion Chemical Company may make distributions to Emil Stevens
consistent with Paragraph 6 below.

   b.  Within thirty (30) days of entry of this Decree
June Stevens shall resign from any compensated positions in
Champion Chemical Company or Imperial Oil Company.  June Stevens
shall receive no further distributions, compensation or payments
of any kind from Imperial Oil Company or Champion Chemical
Company with the exception of health insurance provided to June
Stevens by Imperial Oil Company, and with the exception of
distributions from Champion Chemical Company consistent with
Paragraph 6 below.

   6. a.  Settling Defendants agree not to contest or challenge

15

the United States' right to file a lien on the property owned or
operated by Champion Chemical Company or Imperial Oil Company at
the Imperial Site.  Settling Defendants shall take no actions,
including mortgaging the real property or improvements to the
real property at the Imperial Site, which adversely affect such
lien or any rights or claims represented by such lien.

b.  Settling Defendants agree that the United States shall
be entitled to ninety (90) percent of the "Net Sales Proceeds"
from the "Transfer" of real property or improvements to real
property at the Imperial Site owned by Champion Chemical Company
prior to any distribution of remaining assets to the Settling
Defendants, or to Settling Defendants' heirs, successors, or
assigns.  This provision applies to all "Transfers" whether a
"Transfer" occurs before, during, or after the dissolution or
bankruptcy of Champion Chemical Company,

c.  For purposes of this paragraph, "Transfer" shall mean
each sale, assignment, transfer or exchange by a Settling
Defendant or by Champion Chemical Company (or their heirs,
successors or assigns) of the Champion Chemical Company property,
or any portion thereof, or of Champion Chemical Company, where
title to the property or any portion or interest thereof (or the
entity owning the Property) i) is transferred and Fair Market
Value is received in consideration, or ii) is transferred
involuntarily by operation of law, including foreclosure and its

16

equivalents following default on the indebtedness secured, in whole or in part, by the property, including, but not limited to, a deed or other assignment in lieu of foreclosure. A Transfer does not include a transfer pursuant to an inheritance or a bequest.

d. For purposes of this paragraph, "Fair Market Value" shall, except in the event of a foreclosure or transfer by deed or other assignment in lieu of foreclosure, mean the price at which the property would change hands between a willing buyer and a willing seller under actual market conditions, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. In the event of a transfer by foreclosure, "Fair Market Value" shall mean the amount obtained at the foreclosure sale. In the event of a transfer by a deed or other assignment in lieu of foreclosure, "Fair Market Value" shall mean the balance of Champion Chemical Company's mortgage on the property at the time of the transfer.

e. For purposes of this paragraph, "Net Sales Proceeds" shall mean the total value of all consideration for each "Transfer" (or if the consideration cannot be determined, the Fair Market Value of the property) less i) the balance of Settling Defendant's mortgage on the property or improvements ii) closing costs limited to those reasonably incurred and actually paid by a Settling Defendant associated with the Transfer of the

17

property, and iii) federal and state taxes owed on the proceeds.
Settling Defendants shall provide EPA and the State with
documentation sufficient to show the total value of all
consideration for each Transfer (or if the consideration cannot
be determined, the Fair Market Value of the property) at the time
of each Transfer, the amount of the proceeds of the Transfer, and
the amounts corresponding to items i) through iii) above.  This
documentation shall include, but not be limited to, the report of
an appraisal paid for by Settling Defendant, performed by an
appraiser satisfactory to the Parties, upon appraisal assumptions
satisfactory to the Parties.  The documentation must also
include, either as part of the report or separately, 1) a tax
statement showing the assessed valuation of the property for each
of the three years immediately preceding the Transfer, and 2) a
schedule showing all outstanding indebtedness on the property.

f.  Payments to the United States under this Paragraph shall
be made in accordance with the procedures set forth in Paragraph
4 above, and 25% percent of payments shall be applied toward the
Burnt Fly Bog Site and 75% of payments shall be applied toward
the Imperial Site.

VII.  <u>FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT DECREE</u>

7.  <u>Interest on Late Payments</u>.  In the event that any
payments required by Section V (Reimbursement of Response Costs)
or Section VI, Paragraph 8 (Stipulated Penalty), are not received

when due, Interest shall continue to accrue on the unpaid balance through the date of payment.

8. <u>Stipulated Penalty</u>.

a. If any amounts due to EPA under this Consent Decree are not paid by the required date, Settling Defendants shall be jointly and severally liable to pay to EPA as a stipulated penalty, in addition to the Interest required by Paragraph 7, seven hundred and fifty dollars ($750) per violation per day that such payment is late.

b. If Settling Defendants do not comply with Section VI (Restrictions on Distributions to Settling Defendants) or Section X (Access to Information), Settling Defendants shall be jointly and severally liable to pay to EPA, as a stipulated penalty, one thousand dollars ($1,000) per violation per day of such noncompliance.

c. Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA. All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be remitted via EFT, along with the following information,

to EPA's Account with Mellon Bank, Pittsburgh, Pennsylvania, as
follows:

      i.   Amount of payment
      ii.  Title of Mellon Bank account to receive the
      payment: EPA
      iii. Account code for Mellon Bank account receiving the
          payment: 9108544
      iv.  Mellon Bank ABA Routing Number: 043000261
      v.   Name of Party making payment:
      vi.  EPA Case Number:
      vii. Site/Spill Identifier No. 02-86

To ensure that a payment is properly recorded, a letter should be
sent to the United States, within one week of the EFT, which
references the date of the EFT, the payment amount, that the
payment is for stipulated penalties, the name of the Imperial
Site, the case number, and the name and address of the party
making payment as specified in Section XII (Notices and
Submissions) with a copy to Mr. Ronald Gherardi, Chief, Financial
Management Branch, U.S. EPA, Region II, 290 Broadway, 29th Floor,
New York, New York 10007-1866.


    d.  Penalties shall accrue as provided in this
Paragraph regardless of whether EPA has notified Settling
Defendants of the violation or made a demand for payment, but
need only be paid upon demand.  All penalties shall begin to
accrue on the day after complete performance is due or the day a
violation occurs, and shall continue to accrue through the final
day of correction of the noncompliance.  Nothing herein shall

20

prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

9.   If the United States brings an action to enforce this Consent Decree, Settling Defendants shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

10.   Payments made under Paragraphs 4 and 7-8 shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

11.   The obligations of Settling Defendants to pay amounts owed the United States under this Consent Decree are joint and several.   In the event of the failure of any one or more Settling Defendants to make the payments required under this Consent Decree, the remaining Settling Defendant shall be responsible for such payments.

12.   Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.

## VIII.   COVENANT NOT TO SUE BY PLAINTIFF

13.   <u>Covenants Not to Sue by United States</u>.   Except as
specifically provided in Paragraph 18 (Reservation of Rights by
United States), the United States covenants not to sue or take
administrative action against Settling Defendants pursuant to
Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a),
in connection with the Imperial and Burnt Fly Bog Sites.   Except
with respect to future liability, these covenants not to sue
shall take effect upon receipt by EPA of all payments required by
Section V, Paragraph 4 (Payment of Response Costs to the United
States) and Section VI, Paragraph 7 (Interest on Late Payments)
and 8(a) (Stipulated Penalty for Late Payment).   With respect to
future liability, these covenants not to sue shall take effect
upon issuance of the Final Closeout Reports by EPA for both the
Imperial and Burnt Fly Bog Sites.   These covenants not to sue are
conditioned upon the satisfactory performance by Settling
Defendants of their obligations under this Consent Decree.   These
covenants not to sue extend only to Settling Defendants and do
not extend to any other person.

14.   <u>United States' Pre-Final Close Out Report Reservations</u>.
Notwithstanding any other provision of this Consent Decree, the
United States reserves, and this Consent Decree is without
prejudice to, the right to institute proceedings in this action
or in a new action, or to issue an administrative order seeking
to compel Settling Defendants (1) to perform further response

22

actions relating to the Imperial or Burnt Fly Bog Sites or (2) to

reimburse the United States for additional costs of response if,

prior to issuance of the Final Closeout Reports by EPA:

(i)  conditions at the Imperial or Burnt Fly Bog Site,

previously unknown to EPA, are discovered, or

(ii) information, previously unknown to EPA, is received, in

whole or in part,

and EPA determines that these previously unknown conditions or

information together with any other relevant information

indicates that the Remedial Actions are not protective of human

health or the environment.


15.  <u>United States' Post-Final Close Out Report</u>

<u>Reservations</u>.  Notwithstanding any other provision of this

Consent Decree, the United States reserves, and this Consent

Decree is without prejudice to, the right to institute

proceedings in this action or in a new action, or to issue an

administrative order seeking to compel Settling Defendants (1) to

perform further response actions relating to the Imperial or

Burnt Fly Bog Sites or (2) to reimburse the United States for

additional costs of response if, subsequent to issuance of the

Final Closeout Reports by EPA:

(i)  conditions at the Imperial or Burnt Fly Bog Site,

previously unknown to EPA, are discovered, or

(ii) information, previously unknown to EPA, is received, in

whole or in part,

23

and EPA determines that these previously unknown conditions or
information together with any other relevant information
indicates that the Remedial Actions are not protective of human
health or the environment.

16.    For purposes of Paragraph 14, the information and the
conditions known to EPA for the Imperial Site shall include only
that information and those conditions set forth in the Imperial
ROD issued by EPA in 1990, the administrative record supporting
the 1990 ROD, the Imperial ROD issued by EPA in 1992, the
administrative record supporting the 1992 ROD, the Imperial ROD
issued by EPA in 1999, and the administrative record supporting
the 1999 ROD.    For purposes of Paragraph 15, the information and
the conditions known to EPA for the Imperial Site shall include
only that information and those conditions set forth in the
Imperial ROD issued by EPA in 1990, the administrative record
supporting the 1990 ROD, the Imperial ROD issued by EPA in 1992,
the administrative record supporting the 1992 ROD, the Imperial
ROD issued by EPA in 1999, and the administrative record
supporting the 1999 ROD, and the record for the Imperial Site
maintained by EPA following issuance of the 1999 ROD but prior to
issuance of the Final Closeout Report.

17.    For purposes of Paragraph 14, the information and the
conditions known to EPA for the Burnt Fly Bog Site shall include
only that information and those conditions set forth in the Burnt

Fly Bog ROD issued by EPA in 1983, the administrative record
supporting the 1983 ROD, the Burnt Fly Bog ROD issued by EPA in
1988, the administrative record supporting the 1988 ROD, the
Burnt Fly Bog ROD issued by EPA in 1998, and the administrative
record supporting the 1998 ROD.  For purposes of Paragraph 15,
the information and the conditions known to EPA for the Burnt Fly
Bog Site shall include only that information and those conditions
set forth in the Burnt Fly Bog ROD issued by EPA in 1983, the
administrative record supporting the 1983 ROD, the Burnt Fly Bog
ROD issued by EPA in 1988, the administrative record supporting
the 1988 ROD, the Burnt Fly Bog ROD issued by EPA in 1998, and
the administrative record supporting the 1998 ROD, and the record
for the Burnt Fly Bog Site maintained by EPA following issuance
of the 1998 ROD but prior to issuance of the Final Closeout
Report for the Burnt Fly Bog Site.


     18.  <u>General Reservation of Rights by United States</u>.  The
covenants not to sue set forth in Paragraph 13 do not pertain to
any matters other than those expressly specified therein.  The
United States reserves, and this Consent Decree is without
prejudice to, all rights against Settling Defendants with respect
to all other matters, including but not limited to:


     a.  liability for failure of Settling Defendants to
meet a requirement of this Consent Decree;


25

b.  liability for damages for injury to, destruction
of, or loss of natural resources, and for the costs of any
natural resource damage assessments, with respect to either Site;

c.  criminal liability;

d.  liability, based upon operation of the Sites, or
upon the transportation, treatment, storage, or disposal, of
Waste Materials at or in connection with the Sites, by Settling
Defendant after signature of this Agreement;

e.  liability arising from the past, present, or future
disposal, release, or threat of release of Waste Materials
outside of the Sites; and

f.  liability for response costs that have been or may
be incurred by any federal agencies other than EPA or the
Department of Justice on behalf of EPA at the Sites.

g.  liability for response costs that are incurred by
the United States in connection with the Sites, but only to the
extent of the value of distributions, compensation or payments of
any kind from Imperial Oil Company or Champion Chemical Company
that Settling Defendants receive in violation of this Decree.

26

## IX.   COVENANT NOT TO SUE BY SETTLING DEFENDANTS

19.   Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to Response Costs or response actions relating to the Imperial Site, the Burnt Fly Bog Site or this Consent Decree, including but not limited to:

a.   any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.   any claim arising out of EPA's or the State's response actions, including the actions of their contractors, at the Imperial Site or the Burnt Fly Bog Site;

c.   any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, relating to the Imperial Site or the Burnt Fly Bog Site;

d.   any claim for costs, fees, or expenses incurred in this action or any other action related to response actions at the Imperial Site or the Burnt Fly Bog Site, including claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended; or

e. any claim under the United States Constitution for "takings" or any other matter, under the Tucker Act, 28 U.S.C. § 1491, or at common law, arising out of or relating to past or future access to, implementation of institutional controls on, or past or future response actions undertaken on, property owned or controlled by Settling Defendants at the Imperial Site or the Burnt Fly Bog Site.

20. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

21. The Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters pertaining to either Site, including for contribution, against any person where the person's liability to the Settling Defendants with respect to the Imperial Site or Burnt Fly Bog Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at either Site, or having accepted for transport for disposal or treatment of hazardous substances at either Site, if the materials contributed by such person to either Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at that Site, respectively, or (ii) 10 gallons of liquid materials

28

or 200 pounds of solid materials at that Site, respectively.
This waiver shall not apply to any claim or cause of action
against any person meeting the above criteria if EPA has
determined that the materials contributed to either Site by such
person contributed or could contribute significantly to the costs
of response at either Site.  This waiver also shall not apply
with respect to any defense, claim, or cause of action that a
Settling Defendant may have against any person if such person
asserts a claim or cause of action relating to either Site
against such Settling Defendant.

## X.  <u>EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION</u>

22.  Except as provided in Paragraph 21 above, nothing in
this Consent Decree shall be construed to create any rights in,
or grant any cause of action to, any person  not a Party to this
Consent Decree.  Each of the Parties expressly reserves any and
all rights (including, but not limited to, any right to
contribution), defenses, claims, demands, and causes of action
which each Party may have with respect to any matter,
transaction, or occurrence relating in any way to the Imperial
and Burnt Fly Bog Sites against any person not a Party hereto.

23.  The Settling Parties agree, and by entering this
Consent Decree this Court finds, that Settling Defendants are
entitled, as of the effective date of this Consent Decree, to
protection from contribution actions or claims as provided by

29

Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are the United States' Response Costs for the Imperial and Burnt Fly Bog Sites. The "matters addressed" in this settlement do not include those response costs or response actions as to which the United States has reserved its rights under this Decree (except for claims for failure to comply with the Decree), in the event that the United States asserts rights against Settling Defendants coming within the scope of such reservations.

24.  Each Settling Defendant agrees that, with respect to any suit or claim for contribution brought by him/her for matters related to this Consent Decree, he/she will notify EPA and DOJ in writing no later than 60 days prior to the initiation of such suit or claim. Each Settling Defendant also agrees that, with respect to any suit or claim for contribution brought against him/her for matters related to this Consent Decree, he/she will notify EPA and DOJ in writing within 10 days of service of the complaint or claim upon it. In addition, each Settling Defendant shall notify EPA and DOJ within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

25.  In any subsequent administrative or judicial proceeding

30

initiated by the United States for injunctive relief, recovery of
response costs, or other relief relating to the Imperial Site or
Burnt Fly Bog Site, Settling Defendants shall not assert, and may
not maintain, any defense or claim based upon the principles of
waiver, res judicata, collateral estoppel, issue preclusion,
claim-splitting, or other defenses based upon any contention that
the claims raised by the United States in the subsequent
proceeding were or should have been brought in the instant case;
provided, however, that nothing in this Paragraph affects the
enforceability of the Covenant Not to Sue by Plaintiff set forth
in Section VIII.


XI.    <u>ACCESS TO INFORMATION</u>

26.    Settling Defendants shall provide to EPA, upon request,
copies of all documents and information within their possession
or control or that of their agents relating to activities at the
Imperial Site and/or Burnt Fly Bog Site, including, but not
limited to, sampling, analysis, chain of custody records,
manifests, trucking logs, receipts, reports, sample traffic
routing, correspondence, or other documents or information
related to the Imperial Site and/or Burnt Fly Bog Site.


27. <u>Confidential Business Information and Privileged</u>
<u>Documents</u>.

a. Settling Defendants may assert business
confidentiality claims covering part or all of the documents or

31

information submitted to Plaintiff under this Consent Decree to
the extent permitted by and in accordance with Section 104(e)(7)
of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).
Documents or information determined to be confidential by EPA
will be accorded the protection specified in 40 C.F.R. Part 2,
Subpart B.  If no claim of confidentiality accompanies documents
or information when they are submitted to EPA, or if EPA has
notified Settling Defendants that the documents or information
are not confidential under the standards of Section 104(e)(7) of
CERCLA, the public may be given access to such documents or
information without further notice to Settling Defendants.


     b.  Settling Defendants may assert that certain
documents, records or other information are privileged under the
attorney-client privilege or any other privilege recognized by
federal law.  If Settling Defendants assert such a privilege in
lieu of providing documents, they shall provide Plaintiff with
the following: 1) the title of the document, record, or
information; 2) the date of the document, record, or information;
3) the name and title of the author of the document, record, or
information; 4) the name and title of each addressee and
recipient; 5) a description of the subject of the document,
record, or information; and 6) the privilege asserted.  However,
no documents, reports or other information created or generated
pursuant to the requirements of this or any other consent decree
with the United States shall be withheld on the grounds that they

32

are privileged.  If a claim of privilege applies only to a
portion of a document, the document shall be provided to
Plaintiff in redacted form to mask the privileged information
only.  Settling Defendants shall retain all records and documents
that they claim to be privileged until the United States has had
a reasonable opportunity to dispute the privilege claim and any
such dispute has been resolved in the Settling Defendants' favor.


28.  No claim of confidentiality shall be made with respect
to any data, including but not limited to, all sampling,
analytical, monitoring, hydrogeologic, scientific, chemical, or
engineering data, or any other documents or information
evidencing conditions at or around the Imperial or Burnt Fly Bog
Sites.


XII.  <u>RETENTION OF RECORDS</u>

29.  Until ten years after the entry of this Consent Decree,
each Settling Defendant shall preserve and retain all records and
documents now in his/her possession or control, or which come
into his/her possession or control, that relate in any manner to
response actions taken at the Imperial and Burnt Fly Bog Sites or
the liability of any person for response actions conducted and to
be conducted at the Imperial and Burnt Fly Bog Sites, regardless
of any corporate retention policy to the contrary.


30.  After the conclusion of the document retention period

in the preceding paragraph, Settling Defendants shall notify EPA
and DOJ at least 90 days prior to the destruction of any such
records or documents, and, upon request by EPA or DOJ, Settling
Defendants shall deliver any such records or documents to EPA.
Settling Defendants may assert that certain documents, records,
or other information are privileged under the attorney-client
privilege or any other privilege recognized by federal law.  If
Settling Defendants assert such a privilege, they shall provide
Plaintiff with the following:  1) the title of the document,
record, or information; 2) the date of the document, record, or
information; 3) the name and title of the author of the document,
record, or information; 4) the name and title of each addressee
and recipient; 5) a description of the subject of the document,
record, or information; and 6) the privilege asserted.  However,
no documents, reports, or other information created or generated
pursuant to the requirements of this or any other consent decree
with the United States shall be withheld on the grounds that they
are privileged.  If a claim of privilege applies only to a
portion of a document, the document shall be provided to
Plaintiff in redacted form to mask the privileged information
only.  Settling Defendants shall retain all records and documents
that they claim to be privileged until the United States has had
a reasonable opportunity to dispute the privilege claim and any
such dispute has been resolved in the Settling Defendants' favor.

31.  By signing this Consent Decree, each Settling Defendant

34

certifies individually that, to the best of his/her knowledge and belief, he/she has:

a.   conducted a thorough, comprehensive, good faith search for documents, and has fully and accurately disclosed to EPA, all information currently in his/her possession, custody or control or that of their agents, which relates in any way to the ownership, operation or control of the Imperial and Burnt Fly Bog Sites, or to the ownership, possession, generation, treatment, transportation, storage or disposal of a hazardous substance, pollutant or contaminant at or in connection with the Imperial and Burnt Fly Bog Sites;

b.   not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information relating to its potential liability regarding the Imperial and Burnt Fly Bog Sites, after notification of potential liability or the filing of a suit against the Settling Defendant regarding the Imperial or Burnt Fly Bog Sites; and

c.   fully complied with any and all EPA requests for information regarding the Imperial or Burnt Fly Bog Sites pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e), 9622(e);

d. fully complied with any and all EPA or Department of

35

Justice requests for documents or information regarding the
Settling Defendant's financial circumstances pursuant to Sections
104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e) and
Section 3007 of RCRA, 42 U.S.C. § 6927, and any and all requests
by EPA or the Department of Justice for documents or information
during discovery, mediation, and settlement discussions in this
action.


## XIII.   NOTICES AND SUBMISSIONS

32.  Whenever, under the terms of this Consent Decree,
notice is required to be given or a document is required to be
sent by one party to another, it shall be directed to the
individuals at the addresses specified below, unless those
individuals or their successors give notice of a change to the
other Parties in writing.  Written notice as specified herein
shall constitute complete satisfaction of any written notice
requirement of the Consent Decree with respect to the United
States, EPA, DOJ, and Settling Defendants, respectively.


For the United States:


As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-2-946)
P.O. Box 7611
Ben Franklin Station
Washington, D.C.  20044-7611


36

As to EPA:

ATTN: Imperial Oil/Champion Chemical Site Project Manager
New Jersey Remedial Branch
Emergency and Remedial Response Division
290 Broadway, 19th Floor
New York, New York 10007-1866

ATTN: Imperial Oil/Champion Chemical Site Attorney
New Jersey Superfund Branch
Office of Regional Counsel
290 Broadway, 17th Floor
New York, New York 10007-1866


As to Settling Defendants:

Emil and June Stevens
c/o Steve Madonna
Steven J. Madonna, Esq.
Law Offices of Steven J. Madonna
17 Watchung Avenue
Chatham, New Jersey   07928

## XIV.  RETENTION OF JURISDICTION

33.  This Court shall retain jurisdiction over this matter

for the purpose of interpreting and enforcing the terms of this

Consent Decree.

## XV.  INTEGRATION

34.  This Consent Decree and its appendices constitute the

final, complete and exclusive agreement and understanding among

the Parties with respect to the settlement embodied in this

Consent Decree.  The Parties acknowledge that there are no

representations, agreements or understandings relating to the

settlement other than those expressly contained in this Consent

Decree.

XVI.   <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

35.   This Consent Decree shall be lodged with the Court for
a period of not less than 30 days for public notice and comment.
The United States reserves the right to withdraw or withhold its
consent if the comments regarding the Consent Decree disclose
facts or considerations which indicate that this Consent Decree
is inappropriate, improper, or inadequate.   Settling Defendants
consent to the entry of this Consent Decree without further
notice.

36.   If for any reason this Court should decline to approve
this Consent Decree in the form presented, this agreement is
voidable at the sole discretion of any party and the terms of the
agreement may not be used as evidence in any litigation between
the Parties.

XVII.   <u>EFFECTIVE DATE</u>

37.   The effective date of this Consent Decree shall be the
date upon which it is entered by the Court.

XVIII.   <u>SIGNATORIES/SERVICE</u>

38.   Each undersigned representative of a Settling Defendant
to this Consent Decree and the Assistant Attorney General for the
Environment and Natural Resources Division of the United States
Department of Justice certifies that he or she is authorized to
enter into the terms and conditions of this Consent Decree and to

execute and legally bind such Party to this document.

39. Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

40. Each Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

41. Entry of this Consent Decree by the Court constitutes a final order in this action with respect to the United States` claims against the Settling Defendants.

SO ORDERED THIS _____ DAY OF _February_, 2006.

_United States District Judge_

39

THE UNDERSIGNED PARTIES enter into this Consent Decree in the
matter of <u>U.S. v. Champion Chemical Co., et al., v. Academy Bus
Lines, et al.</u>, relating to the Imperial Oil Co., Inc./Champion
Chemical Superfund Site.


FOR THE UNITED STATES OF AMERICA




Date: 1/5/00


Lois J. Schiffer
Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice
Washington, D.C.  20530




Date: 11/7/2000


Kenneth G. Long
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
    Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
KGL(9908)

40

THE UNDERSIGNED PARTY enters into this Consent Decree in the
matter of U.S. v. Champion Chemical Co., et al., v. Academy Bus
Lines, et al., relating to the Imperial Oil Co., Inc./Champion
Chemical Superfund Site.


FOR THE UNITED STATES OF AMERICA


                              Robert J. Cleary
                              United States Attorney
                              District of New Jersey


Date: _11/6/00_         By: _Irene Dowdy_____
                              Irene Dowdy
                              Assistant United States Attorney
                              U.S. Department of Justice
                              District of New Jersey
                              402 East State Street
                              Trenton, New Jersey 08608


41

THE UNDERSIGNED PARTY enters into this Consent Decree in the
matter of U.S. v. Champion Chemical Co., et al., v. Academy Bus
Lines, et al., relating to the Imperial Oil Co., Inc./Champion
Chemical Superfund Site.

FOR DEFENDANT EMIL STEVENS:

Date: _7-28-2000_____          _Emil Stevens_____
[Names and address of
Defendant's signatories]             _____

                                     _____

     Agent Authorized to Accept Service on Behalf of Above-signed
Party:

          Name:     _____

          Title:    _____

          Address:  _____

43

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of U.S. v. Champion Chemical Co., et al., v. Academy Bus Lines, et al., relating to the Imperial Oil Co., Inc./Champion Chemical Superfund Site.

FOR DEFENDANT JUNE STEVENS:

Date: 7-28-2000
[Names and address of
Defendant's signatories]

_June Stevens_ (signature)

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: _____

Title: _____

Address: _____

44